**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MODY AWAD FARAG ABDELMALAK,<br><br>Petitioner,<br><br>v.<br><br>ERNESTO SANTACRUZ JR., et al.,<br><br>Respondents. | Case No. 5:26-cv-01752-MAA<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (ECF NO. 1)** |

On April 9, 2026, Petitioner Mody Awad Farag Abdelmalak ("Petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus ("Petition") against Ernesto Santacruz Jr., Acting Field Office Director for Immigration and Customs Enforcement ("ICE") and Removal Operations in Los Angeles; Todd M. Lyons, Acting Director of ICE; C. Armant, Warden of the Desert View Detention Facility; Markwayne Mullin, Secretary, U.S. Department of Homeland Security ("DHS"); and Pam Bondi, United States Attorney General ("Respondents"). (Pet., ECF No. 1.) On April 16, 2026, Repondents filed an Answer to the Petition. (Ans., ECF No. 7.) The same day, Petitioner filed a Reply. (Rep., ECF No. 8.) The parties having consented to proceed before a magistrate judge for all purposes, the case was assigned to the undersigned on April 9, 2026. (ECF No. 4.)

## I.   BACKGROUND

The Petition alleges that Petitioner, a citizen of Egypt, entered the United States via a CBP App Appointment on September 20, 2024 and was detained by ICE.  (Pet. ¶¶ 19–20[1]; Pet. Exh. C.)  Petitioner was thereafter paroled into the United States and released on his own recognizance by DHS on November 13, 2024, under an Order of Release on Own Recognizance (Form I-220A).  (Pet. ¶ 20; Pet. Exhs. D–E.)  The Petition further alleges that, despite complying with the terms of his release, Petitioner was subsequently re-detained on March 2, 2026.  (Pet. ¶ 22.)  Prior to his re-detention, Petitioner was working and paying taxes.  (*Id.* at ¶ 24.)  Petitioner remains in ICE custody and is being held at the Desert View Annex facility in Adelanto, California.  (*Id.* at ¶ 1.)

## II.   PETITIONER'S CLAIMS

Petitioner challenges his detention on two grounds:  (1) Violation of the Immigration and Nationality Act; and (2) Procedural Due Process.  (Pet. ¶¶ 32–43.)  Petitioner seeks immediate release from custody under "reasonable or the same conditions of supervision," without an ankle monitor, an injunction ordering Respondents not to revoke Petitioner's release again without providing prior written notice and an opportunity to respond, and an order returning to Petitioner all of his personal belongings, including, but not limited to, any work permit, personal identification documents, and any other documents confiscated from him at the time of his detention.  (*Id.* at 11–12.)

## III.   LEGAL STANDARD

Writs of habeas corpus may be granted by the federal courts to noncitizens in the custody of immigration authorities.  28 U.S.C. § 2241(c)(3) ("The writ of

---

[1] Pinpoint citations refer to paragraphs and, where none, to the page numbers in the CM/ECF-generated headers of filed documents.

habeas corpus" extends to individuals "in custody in violation of the Constitution or laws or treaties of the United States."); *Doe v. Garland*, 109 F.4th 1188, 1194 (9th Cir. 2024) (holding that petition challenging alien's detention without bond hearing fell within the "core of habeas"). The writ is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The government therefore may detain individuals outside of the criminal context only "in certain special and 'narrow' nonpunitive 'circumstances.'" *Id.* (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

As the Supreme Court has repeatedly held, under most circumstances, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original) (collecting cases). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Thus, while "in some circumstances the initial decision to

detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" *Id.* (alterations in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).  The liberty of a person who has been released from government custody is valuable and falls within the protection of the Due Process Clause.  *Morrissey*, 408 U.S. at 482; *Pinchi*, 792 F. Supp. 3d at 1032.

Courts generally apply the three-part test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine what procedures are constitutionally sufficient to protect a liberty interest.  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022) ("assuming without deciding" that *Mathews* applied and applying test in immigration detention context); *Pinchi*, 792 F. Supp. 3d at 1033, 1033 n.2 (discussing Ninth Circuit's treatment of *Mathews*); *Perez Bueno v. Janecka*, No. 5:25-CV-03376-CAS-BFM, 2026 WL 309934, at *3 (C.D. Cal. Feb. 5, 2026) (applying *Mathews* test and ordering immediate release of noncitizen asylum applicant previously released on own recognizance by DHS who was detained again without pre-detention notice or hearing).  The *Mathews* Court stated:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Mathews*, 424 U.S. at 335.

///

///

///

4

## IV.    DISCUSSION

The Answer states that "Respondents are not presenting an opposition argument at this time." (Resp. 2.)  Respondents do not contest any of the Petition's allegations and present no additional facts. (*See generally id.*)  The Answer acknowledges that Petitioner seeks release from custody and does not suggest that any other form of relief would be appropriate. (*See generally id.*)

It thus appears, from the uncontested record before the Court, that:

1) Petitioner had a substantial private liberty interest in remaining out of custody;
2) The risk of erroneous deprivation of this liberty interest was high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker; and
3) No countervailing government interest has been identified that could outweigh the need to protect Petitioner's liberty interest with a pre-deprivation hearing.

The Due Process Clause therefore entitled Petitioner to notice and a hearing *prior* to any re-arrest or detention.  As no suggesion has been made that such process was provided prior to his March 2, 2026, re-detention, that re-detention violated the Due Process Clause.

As many other courts have held in recent months, the appropriate remedy for such a violation is to place Petitioner in the position he was in prior to the violation—that is, he should be released from custody under the same conditions that governed his prior release.  *E.g.*, *Perez Bueno*, 2026 WL 309934, at *4; *Garcia-Henriquez v. LaRose*, No. 3:26-CV-00249-RBM-BJW, 2026 WL 323328, at *3 (S.D. Cal. Feb. 6, 2026); *Solano v. Robbins*, No. 1:25-CV-01823-EPG-HC, 2025 WL 3718831, at *10 (E.D. Cal. Dec. 23, 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).  Thus, as Petitioner has shown that his due process rights were violated and Respondents have not opposed his claim for immediate release, the Court GRANTS the Petition.

///

5

## V.   CONCLUSION

IT IS THEREFORE ORDERED THAT:

1.  Respondents MUST RELEASE Petitioner from custody within 24 hours of entry of this Order and MUST REINSTATE his parole with the same conditions that were in place prior to his re-detention.

2.  Respondents MUST RETURN to Petitioner all documents and other property confiscated from him at the time of his re-detention.

3.  Respondents MUST FILE a Notice of Compliance, notifying the Court that Petitioner has been released, no later than three calendar days from the date of this order.  Upon receipt of the Notice of Compliance, the Court will enter judgment accordingly.

4.  Respondents are ENJOINED from re-detaining Petitioner without providing prior written notice and an opportunity to respond.

DATED: ___April 17, 2026___

_____
HONORABLE MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE

6